**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AUSTIN GOSCH, : <br>     Plaintiff, : <br> : <br>     v. : <br> : <br> INTERNATIONAL CHAPTER OF : <br> HORSESHOERS AND EQUINE : <br> TRADES, LOCAL 947, : <br>     Defendant | CASE NO. 1:16-CV-00544 |

*M E M O R A N D U M*

    Plaintiff, who worked as a gate-crew employee on a horse racing track, sues his labor union (Defendant) for breach of the duty of fair representation. The claim's focus is on Defendant's alleged decision not to arbitrate a grievance on Plaintiff's behalf, against his former employer, Hollywood Casino at Penn National Race Course (the "Casino"). The action was originally filed in state court; however, Defendant filed a notice of removal, asserting that the action could have originally been filed here because the Court has federal-question jurisdiction. Plaintiff, through his pending motion to remand, disagrees with Defendant. At the forefront is whether Plaintiff pleads a state-law claim and, if so, whether the claim is completely preempted by federal law. Because the Court concludes that Plaintiff pleads a state-law claim that is not completely preempted by federal law, federal-question jurisdiction is lacking. Plaintiff's motion to remand will be granted.

    *I.    Background and Procedural History*

    On February 18, 2016, Plaintiff, a Pennsylvania resident, filed a civil complaint against Defendant in the Dauphin County Court of Common Pleas. (Doc. 1-2 at 2-9).

    According to Plaintiff, he was employed by the Casino as a gate-crew employee, on a horse racing track. (Id. at 3, 4; see Doc. 6 at 1). Plaintiff also performed

"ponying functions" on the same race track, as an "independent contractor." (Doc. 1-2 at 3). In other words, in addition to his job as a gate-crew employee, Plaintiff was paid to lead horses into racing gates. (Id.).

In 2015, Defendant, a labor union, was certified by the Pennsylvania Labor Relations Board ("PLRB"), under the Pennsylvania Labor Relations Act ("PLRA"), as the sole and exclusive collective bargaining unit for gate-crew and valet-crew employees on the race track, at the Casino. (Id. at 3, 11-12). After certification, Defendant and the Casino approved a collective bargaining agreement ("CBA"). (Doc. 1-2 at 4, 11). Accordingly, as a gate-crew employee, Plaintiff became represented by Defendant under the terms of the CBA. (See id. at 4).

Indeed, the CBA provided that gate-crew and valet-crew employees employed by the Casino were required to be members of the union. (See id. at 12, 13). Relevant to this case, the CBA also provided for a grievance and arbitration procedure. (Id. at 17-18). The CBA further prohibited "Unit Employees"[1] from performing "services for pay for other employers or individuals during times when such Unit Employees are working for the [Casino]." (Id. at 26). But valet-crew employees were permitted to accept "gratuities from the Jockeys with whom they work[ed]." (Id. at 26).

After the CBA went into effect, Plaintiff received a "documented verbal warning" from the Casino. (Id. at 4, 29). Plaintiff "was warned that according to the CBA he [was] not allowed to be employed by another employer while performing work for [the Casino at the race track]." (Id. at 29). Plaintiff was also "told to finish up his outside contracts," relating to his "ponying" activities. (Id.). Then, a week later, Plaintiff received a

---

[1] The CBA defined "unit employees" as "full-time and regular part-time starting gate crew and valet crew employees." (Doc. 1-2 at 12).

2

"written warning" because, in violation of the CBA, he "continued to escort horses to the starting gate." (Id. at 4, 31). The written warning also explained that Plaintiff's "[f]ailure to comply with the CBA [would] result in further disciplinary actions, up to and including separation." (Id. at 31).

On the day after Plaintiff received a written warning, he asked his Shop Steward[2] to set up a meeting to discuss a problem arising out of the CBA. (Id. at 4). Plaintiff took that course of action, in compliance with the CBA's grievance procedure. (See id. at 17). Plaintiff wanted to grieve the warnings he received "because the Casino was permitting the [v]alets to continue the past practice of working for another employer, [while] denying him the [same] right." (Id. at 5). In Plaintiff's view, he was being treated unfairly or discriminated against. (Id.).

The Shop Steward, however, did not set up any meetings. (Id. at 4). After Plaintiff informed Defendant that the Shop Steward did not set up any meetings, the union proceeded to review Plaintiff's grievance itself. (See id. at 5). In that regard, Defendant held an "informal" telephone conference. (Id.). During the conference, Plaintiff asked Defendant to have its attorney review his grievance. (Id. at 6). Not long after, Defendant informed Plaintiff that it reviewed his grievance and found that the grievance lacked merit. (Id. at 6, 33).

Plaintiff then attempted to have another, similar grievance filed. (Id. at 6). Defendant, though, rejected it, claiming that it lacked merit. (Id. at 6, 38). In the end, the Casino terminated Plaintiff's employment "because he would not choose between his work as a member of the gate crew and the independent contractor role of ponying." (Id. at 6).

---

[2] Under the CBA, "shop stewards" represented the interests of the Unit Employees. Defendant was permitted to determine the shop stewards' qualifications and designate them accordingly. (Doc. 1-2 at 13).

3

Based on these factual allegations, Plaintiff filed an action against Defendant for breach of the duty of fair representation, seeking injunctive relief in the form of an order compelling Defendant to file a grievance with the Casino *nunc pro tunc*. (Id. at 7-8; see Doc. 11 at 2). Plaintiff alleges that Defendant's decision not to arbitrate a grievance on his behalf was arbitrary, discriminatory, or made in bad faith. Plaintiff did not allege any sources of law.

Before filing his civil complaint, moreover, Plaintiff filed unfair-labor-practice charges with the National Labor Relations Board ("NLRB") and PLRB. (Doc. 6 at 2, 6-7; Doc. 13-1 at 1-3).

The PLRB informed Plaintiff that no complaint would be issued. (Doc. 13-1 at 5-6). According to the PLRB, even if Plaintiff had filed a charge under the PLRA, rather than the Pennsylvania Employe Relations Act ("PERA"), he failed to state a cause of action within the Board's jurisdiction to remedy. The PLRB noted that the civil courts (not the Board) possessed exclusive jurisdiction to entertain claims for breaches of the duty of fair representation. (Id. at 5).

The NLRB informed Plaintiff that it would not get involved in labor disputes concerning horse racing tracks. (See Doc. 6 at 2; Doc. 13-1 at 7, 13). Consequently, Plaintiff withdrew the NLRB charge against Defendant. (Doc. 6 at 2, 8).

On February 22, 2016, Plaintiff served his civil complaint on Defendant, and, on March 11, 2016, Defendant received it. (Doc. 1 at ¶ 2). Thereafter, on March 30, 2016, Defendant filed a notice of removal in this Court. (Doc. 1). According to Defendant, this Court has federal-question jurisdiction over Plaintiff's action, in that the claim raised therein is a federal claim, governed by Section 301(a) of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185(a), and is otherwise completely preempted[3] by the same federal law. (See id. at ¶¶ 7-11).

Since Defendant removed this action, Plaintiff has filed a motion to remand. (Doc. 5). In his motion, Plaintiff's basic premise is that the Court lacks subject-matter jurisdiction. According to him, the duty-of-fair-representation claim is a state-law claim that is not preempted by federal law. (See id.). Plaintiff's motion to remand has been fully briefed, (Docs. 7, 8, 9, 11, 12, 13; see Doc. 10), and is ripe for review.[4]

*II.   Removal and Motions to Remand*

When a plaintiff moves to remand, federal district courts must turn to the "comprehensive statutory scheme" enacted by Congress regarding the removal of state-court actions to federal court. See *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 745 (3d Cir. 1995)(referring to the statutory-removal scheme as "comprehensive"). This statutory scheme can be found in the United States Code at 28 U.S.C. §§ 1441 – 1455. In this case, three sections of the statutory scheme are particularly relevant: 1441, 1446, and 1447.

Section 1441 provides in pertinent part:

---

[3]   Defendant solely asserts in its notice of removal that Plaintiff's claim is "preempted" by Section 301(a). (Doc. 1 at ¶ 10). What Defendant apparently meant is that Section 301 *completely* preempts Plaintiff's action, cloaking the Court with federal-question jurisdiction. See *Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531 (3d Cir. 2010)(explaining that the federal defense of preemption does not permit removal, while the doctrine of complete preemption does); *Shanefelter v. United States Steel Corporation*, 784 F.Supp.2d 550, 557 (W.D. Pa. 2011)("One such instance of complete preemption occurs in the context of § 301(a) of the LMRA . . . .").

[4]   Defendant points out that Plaintiff did not file a certificate of concurrence or non-concurrence with his motion to remand. (See Doc. 8 at 2). While the Court expects litigants to obey its Local Rules, no interest of justice would be served by denying the present motion on such a technical basis. The motion is clearly opposed, has been fully briefed, and involves a critical, jurisdictional issue.

5

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). In plainer language, "a defendant may remove an action brought in state court to federal district court if the claims fall within the scope of federal [subject-matter] jurisdiction." *Tuckey v. Intermatic, Inc.*, No. 1:13-CV-2096, 2014 WL 281692, at *1 (M.D. Pa. Jan. 24, 2014)(Conner, C.J.)(citing 28 U.S.C. § 1441(a); *Allbritton Commc'ns Co. v. NLRB*, 766 F.2d 812, 820 (3d Cir. 1985)).

"The two primary types of '[federal subject-matter] jurisdiction' that § 1441(a) contemplates are diversity jurisdiction and federal question jurisdiction." *Federal National Mortgage Association v. Preston*, No. 4:15-CV-01739, 2015 WL 6751064, at *1 (M.D. Pa. Nov. 5, 2015)(Brann, J.); see *Schulman v. MyWebGrocer, Inc.*, No. 14-CV-7252, 2015 WL 3447224, at *1 (E.D.N.Y. May 28, 2015)("A case may be removed from state court to federal court only if it could have originally been commenced in federal court on either the basis of federal question or diversity jurisdiction."). Generally speaking, diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – [] citizens of different states." See 28 U.S.C. § 1332(a)(1). Moreover, "'[t]he presence or absence of federal-question jurisdiction is [normally] governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. See *Gully v. First National Bank*, 299 U.S. 109, 112–113 (1936). The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Kline v. Security Guards, Inc.*, 386 F.3d 246, 251-52 (3d Cir.

6

2004)(quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  In other words, federal-question jurisdiction "'cannot be predicated on an actual or anticipated defense,'" nor can it "'rest upon an actual or anticipated counterclaim.'"  *Preston, supra*, at *2 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009)(internal citation omitted)); but see, *Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531 (3d Cir. 2010)("[T]he doctrine of complete preemption creates an exception to the well-pleaded complaint rule.")(citing *Aetna Health Inc. v. Davila*, 543 U.S. 200, 207 (2004); *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004)).

Next, "[§] 1446 sets forth the procedure for [a Defendant's removal of] a case to federal court."  *Ward*, 48 F.3d at 745.  To remove a state-court action, a defendant must file a notice of removal "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  This notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief . . . ."  28 U.S.C. § 1446(b)(1).

> A party may freely amend the notice of removal within the 30–day period provided by § 1446(b) to remove an action. *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n. 13 (3d Cir. 2003) (citing *Shaw v. Dow Brands Inc.*, 994 F.2d 364, 368 (7th Cir. 1993)).  After this 30–day window expires, courts distinguish between amendments that seek to add jurisdictional information and those that seek to add procedural information. See *Pinnacle Choice, Inc. v. Silverstein*, No. 07–5857, 2008 WL 2003759, at *4 (D.N.J. May 6, 2008).  . . .  Jurisdictional amendments are permitted only to the extent that they clarify or correct allegations already contained in the original notice. *USX Corp.*, 345 F.3d at 205 n. 12 (citing 28 U.S.C. § 1653).

*Dragani v. Genesse Valley Investors*, No. 11-1193, 2011 WL 2491066, at *5 (D.N.J. June 6, 2011).  A defendant "may not rely on an entirely new basis for jurisdiction not set forth in the

7

removal petition." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 412 (3d Cir. 2015)(citations omitted).

With respect to § 1447, it "covers procedure after removal has occurred." *Ward*, 48 F.3d at 745. In pertinent part, § 1447 states the following:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). As such, § 1447(c) "provides for the remand of a case that has been removed under [§] 1446 and delineates two categories for removal: (1) a defect in the removal procedure and (2) the absence of subject matter jurisdiction[.]" *Ward,* 48 F.3d at 745 (internal quotation marks omitted).

When a motion to remand, such as the one in this case, is filed on the premise that a federal court lacks subject-matter jurisdiction, the removing party bears the burden of "showing the proper exercise of jurisdiction by the removal court . . . ." *Schulman, supra*, at *1 (citing *Cal. Pub. Emps. Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004); *Grimo v. Blue Cross/Blue Shield of Vt.*, 34 F.3d 148, 151 (2d Cir. 1994)); see *Tuckey, supra*, at *1 ("As the removing party asserting federal jurisdiction, the defendant bears the burden of proving that the action is properly before the district court.")(citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993); *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). Where subject-matter jurisdiction appears to be lacking, the action must be remanded. *Summit Sheet Metal, LLC v. Sheet Metal Workers' International Association, Local Union No. 44*, No. 3:13-CV-1623, 2013 WL 4520501, at *1 (M.D. Pa.

8

Aug. 26, 2013)(Caputo, J.).  Furthermore, "'any doubt about the right of removal requires resolution in favor of remand,'" *Preston, supra*, at *1 (quoting *Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)), and the "'removal statutes are to be strictly construed against removal . . . ."  *Summit Sheet, supra*, at *1 (citing *Boyer*, 913 F.2d at 111).

To decide whether the removal court has subject-matter jurisdiction over an action, "the Court 'must focus on the plaintiff's complaint at the time the petition for removal was filed,' and assume all factual allegations therein are true."  *Summit Sheet, supra*, at *1 (quoting *Steel Valley Auth. v. Union Switch & Signal Div. Am. Standard, Inc.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).  When a defendant removes a case based on diversity of citizenship, however, "courts are permitted to look to materials outside the pleadings, 'includ[ing] documents appended to a notice of removal or a motion to remand that convey information essential to the court's jurisdictional analysis.'"  See *Schulman, supra*, at *1 (quoting *Romano v. Kazacos*, 609 F.3d 512, 520 (2d Cir. 2010)); see also, *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)(Douglas, J.)(noting that when a question of a district court's jurisdiction is raised "the court may inquire by affidavits or otherwise into the facts as they exist.")(citations omitted).

### III.  Discussion

Defendant filed a notice of removal asserting that the Court has federal-question jurisdiction over Plaintiff's action, originally filed in state court.  According to Defendant, Plaintiff's claim for breach of the duty of fair representation is a federal claim, governed by Section 301(a) of the LMRA and is otherwise completely preempted by the same federal law.  Plaintiff moves to remand on the basis that this Court lacks subject-

9

matter jurisdiction.  According to Plaintiff, he pleads a state-law claim that is not completely preempted by federal law.

### A. Plaintiff's Claim

Plaintiff's claim is that Defendant breached its duty of fair representation when the union did not arbitrate a grievance on his behalf.  And Plaintiff alleges that Defendant's decision against arbitrating a grievance, which resulted in the loss of his job, was discriminatory, arbitrary, or made in bad faith.  According to Defendant, Plaintiff's claim is a federal claim, governed by Section 301(a) of the LMRA.  The Court disagrees with Defendant and concludes that Plaintiff pleads a state-law claim.

Section 301(a) of the LMRA provides that:

> Suits for *violation of contracts* between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 129(a)(emphasis added).  As emphasized, this provision concerns claims for contractual violations.  See *Summit Sheet, supra*, at *2 (quoting *Textron Lycoming Reciprocating Engine Division, Avco Corp. v. United Auto. Workers*, 523 U.S. 653, 656, 657 (1998)).  More specifically, the provision "governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (quoting *Electrical Workers v. Hechler*, 481 U.S. 851, 859, n. 3 (1987)); see *Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1168 (5th Cir. 1989)("When a collective bargaining agreement imposes a duty of fair representation, there is federal jurisdiction over

10

a claim for breach of that duty under [S]ection 301 . . . .")(citing *In re Carter*, 618 F.2d 1093, 1104 (1980)).

Plaintiff's claim does not involve a contractual violation.

At the outset, the Court notes that a union's duty of fair representation is generally founded upon the relationship between a union and its members, as well as the duty imposed by labor statutes. *Falsetti v. Local Union No. 2026, United Mine Workers of America*, 161 A.2d 882, 895 n. 21 (Pa. 1960)(citing *Brotherhood of Railroad Trainmen v. Howard*, 343 U.S. 768 (1952); *Graham v. Brotherhood of Locomotive Firemen, etc.*, 338 U.S. 232 (1949); *Steele v. Louisville & N. R. Co.*, 323 U.S. 192, 198–199 (1944); *Grand Lodge of the Broth. of Ry. And S.S. Clerks, Freight Handlers, Express and Station Employees v. Girard Lodge No. 100*, 120 A.2d 523, 525 (Pa. 1956)); but see, *Richardson, supra*, 864 F.2d at 1168. Furthermore, claims for breach of the duty of fair representation "often require review of the substantive positions taken and policies pursued by a union in its negotiation of a collective bargaining agreement and in its handling of the grievance machinery." *Vaca v. Sipes*, 386 U.S. 171, 181 (1967).

Here, Plaintiff's claim, as stated in the complaint, will apparently turn on the substantive position taken by Defendant in deciding against arbitrating a grievance on his behalf. Indeed, the focus of the claim will apparently be about whether Defendant, in good faith and in a nonarbitrary manner, made a decision as to the merits of Plaintiff's grievance. (See Doc. 1-2 at 7); see also, *Vaca*, 386 U.S. at 194 (citing *Humphrey v. Moore*, 375 U.S. 335, 349-50 (1964); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337-39 (1953)); *Ziccardi v. Commonwealth*, 456 A.2d 979, 981 (Pa. 1982)("Under *Falsetti*, a member of a bargaining unit has a right to sue his union for failure to proceed to arbitration when the complaint

alleges bad faith."). Also, the claim does not appear to turn on any rights actually granted in, or duties imposed by, the CBA or other contractual agreements. Plaintiff's claim is not a federal claim governed by Section 301(a) of the LMRA.

The Court further notes that claims filed against unions for breaching the duty of fair representation do not require concomitant claims that contract provisions were violated by an employer. See *Breininger v, Sheet Metal Workers Intern. Ass'n Local Union No. 6*, 493 U.S. 67, 80, 83, 84 (1989); cf. *Vaca*, 386 U.S. at 183, 185-86 (discussing hybrid 301 claims).

Moreover, while most of Pennsylvania's state-court decisions involving claims for breach of the duty of fair representation concern cases brought by public-sector employees against unions certified under the PERA, 43 P.S. §§ 1101.101 – 1101.2301, see, e.g., *Case v. Hazelton Area Educational Support Personnel Association*, 928 A.2d 1154 (Pa. Cmwlth. 2007), no authority appears to suggest that the duty of fair representation does not extend to private-sector unions that represent private-sector employees and are certified under the PLRA. Similarly, no authority appears to suggest that claims for breaches of the duty of fair representation can only be brought by public-sector employees against their respective unions certified under the PERA.[5]

The Court also notes that the PLRA contains the following language:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employes in a unit appropriate for such purposes, shall be the exclusive representatives of all the employes in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employe or a group of employes shall have the right at any time to present grievances to their employer.

---

[5] Even the PLRB, in its letter to Plaintiff, indicated that a claim may be brought by private-sector employees against their unions, certified under the PLRA, for breaching the duty of fair representation. (See Doc. 9-1 at 1).

43 P.S. § 211.7(a).  The PLRA was patterned after the NLRA.  *Pennsylvania Labor Relations Board v. Loose*, 168 A.2d 323, 325 (Pa. 1961).  And, under the NLRA, a union's duty of fair representation is implied in § 9(a), 29 U.S.C. § 159(a).  *Faber, supra*, 440 F.3d at 143.  Section 9(a) provides:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: Provided, That any individual employee or a group of employees shall have the right at any time to present grievances to their employer and to have such grievances adjusted, without the intervention of the bargaining representative, as long as the adjustment is not inconsistent with the terms of a collective-bargaining contract or agreement then in effect: Provided further, That the bargaining representative has been given opportunity to be present at such adjustment.

29 U.S.C. § 159(a).

Given the similarity between the language in the PLRA and NLRA, with a particular focus on the grant of exclusive-representation status to unions, a Pennsylvania state court could easily, and expressly, hold that private unions certified under the PLRA have a statutorily-implied duty of fair representation similar, or equivalent, to unions covered under the NLRA.  See *Breininger*, 493 U.S. at 83 ("[T]he duty is implied from the grant of exclusive relationship status . . . .").  Of course, this Court's job is not to make that determination: it is ultimately a decision for the state courts of Pennsylvania.  What this means, though, is that the Court does not agree with Defendant that Plaintiff's claim presently has no basis in state law.

In light of Plaintiff's assertion that he pleads a state-law claim, coupled with what was pleaded in the complaint at the time it was filed in state court, the Court finds that Plaintiff pleads a state-law claim for relief.[6]

*B. Preemption*

Although Plaintiff pleads a state-law claim against Defendant for breach of the duty of fair representation, the Court must still consider whether the claim is completely preempted by Section 301(a) of the LMRA. (See Doc. 1 at ¶ 10).

Again, the federal court must have subject-matter jurisdiction for removal to be proper. The Court is not concerned with whether it has diversity jurisdiction. Therefore, the only other basis of jurisdiction with which the Court is concerned involves federal-question jurisdiction.

"The question of whether federal question jurisdiction exists is determined by the 'well-pleaded complaint rule,' which requires that a federal question be 'presented on the face of the plaintiff's properly pleaded complaint.'" *Shanefelter v. United States Steel Corporation*, 784 F.Supp.2d 550, 557 (W.D. Pa. 2011)(quoting *Caterpillar*, 482 U.S. at 392). "The well-pleaded complaint rule is not absolute . . . because under appropriate circumstances 'a defendant may be able to remove a case notwithstanding a complaint's apparent grounding in state law.'" *Shanefelter,* 784 F.Supp.2d at 557 (quoting *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 228 (3d Cir. 1995)). "The doctrine of complete preemption presents one such circumstance." *Id.*

---

[6] The Court expresses no opinion about whether Plaintiff *sufficiently* pleads a state-law claim.

> Under the doctrine of complete preemption, the preemptive force of federal law is "so powerful as to displace entirely any state cause of action." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23 (1983). The Supreme Court has explained that complete preemption operates to "convert[ ] an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance Co. v. Taylor*, 481, U.S. 58, 65 (1987). Thus, when a federal statute is found to preempt an area of state law completely, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393; see also *Franchise Tax Bd.*, 463 U.S. at 24 ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily arises under federal law").

*Shanefelter*, 784 F.Supp.2d at 557. "One such instance of complete preemption occurs in the context of § 301(a) of the LMRA . . . ." *Id*.

Here, the preemptive force of Section 301 does not reach Plaintiff's claim. The claim falls outside the scope of that statutory provision because the claim does not involve a contractual violation. This was previously discussed when reviewing the basis of Plaintiff's claim for relief, *supra*. Accordingly, Plaintiff's claim against Defendant for breaching the duty of fair representation is not completely preempted by Section 301(a) of the LMRA.

### *C. Miscellaneous*

The time for Defendant to substantively amend the notice of removal and assert new jurisdictional bases has lapsed. At no point did Defendant amend (or seek to amend) the notice of removal to include as grounds for removal that (1) the Court has diversity jurisdiction or (2) Section 9(a) of the NLRA completely preempts Plaintiff's cause of action. In this vein, the Court will not consider either proposition although they were raised

and addressed in the parties' briefs regarding Plaintiff's motion to remand.[7]  Also, to that end, the removal statutes are to be strictly construed in favor of remand.  Furthermore, Defendant's notice of removal clearly rests on the assertions that the Court has federal-question jurisdiction in that Plaintiff's claim is governed by Section 301(a) of the LMRA and otherwise completely preempted by the same federal law.  The notice makes no mention of (or reference to) diversity jurisdiction or Section 9(a) of the NLRA.

### IV.  *Conclusion*

Plaintiff pleads a state-law claim against Defendant, a labor union, for breach of the duty of fair representation.  And the state-law claim is not completely preempted by Section 301(a) of the LMRA.  Accordingly, the Court does not have federal-question jurisdiction.  Moreover, the Court will not consider whether it has diversity jurisdiction or whether Section 9(a) of the NLRA completely preempts Plaintiff's cause of action.  Those assertions were not made in Defendant's notice of removal and the time for substantive amendments has lapsed.  Plaintiff's motion to remand will be granted.  An appropriate order will follow.

>                                    /s/ William W. Caldwell
>                                    William W. Caldwell
>                                    United States District Judge

**Date Signed**: August 3, 2016

---

[7]  Plaintiff's motion to remand was filed after the thirty-day deadline in § 1446(b) expired.